# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GRACIELA SALINAS, | ) | 1:10cv02095 AWI DLB |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS |
| Plaintiff, | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff GRACIELA SALINAS ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for Findings and Recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on July 10, 2008, alleging disability since August 15, 2006, due to stage III breast cancer, depression, right arm pain and right-sided upper body numbness. AR 95-104, 127-133. After her application was denied initially and on reconsideration, Plaintiff

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

requested a hearing before an Administrative Law Judge ("ALJ").  AR 46, 66-70, 74.  ALJ

Sharon Madsen held a hearing on April 6, 2010, and issued a decision denying benefits on May

28, 2010.  AR 22-30, 496, 518.  The Appeals Council denied review on September 10, 2010.  AR

6-8.

Hearing Testimony

ALJ Madsen held a hearing on April 6, 2010, in Fresno, California.  Plaintiff appeared

with her attorney, Gina Fazio.  Vocational expert ("VE") Thomas Dachelet also appeared and

testified.  AR 496.

Plaintiff testified that she was born in 1957.  AR 500.  She is married and lives with her

husband and their 20 year old son.  Plaintiff's husband is not working, but is looking for a job.

AR 501-502.  Plaintiff completed the eighth grade.  She has a driver's license and is able to

drive.  AR 502.

Plaintiff explained that she has problems taking care of her personal needs, such as taking

a bath.  She can't use her arms for some things and doesn't perform many household chores.  She

can wash some dishes and microwave food.  AR 502-503.  Plaintiff sometimes goes shopping

and regularly goes to church.  She has a two year-old grandchild but does not care for the child.

AR 503.  During a typical day, Plaintiff spends the day resting.  She doesn't always watch

television and does not read or listen to music.  AR 503.

Plaintiff last worked in 2003 and was laid off after a few months.  AR 505.

Plaintiff had breast cancer but has not had a reoccurrence.  AR 505.  She has numbness

and pain in her right arm, as well as numbness in the right side of her upper body.  AR 505.

Plaintiff wears a stocking on her right arm all the time, though she still has problems with

swelling.  Plaintiff does home exercises but they do not help with the pain and swelling.  AR

506.  Plaintiff cannot reach back with her right arm and cannot use it to lift anything.  She also

has trouble using the right arm for gripping and grasping.  AR 507.

Plaintiff also has diabetes, which is under control.  She no longer takes medication but

checks her blood sugar levels.  Plaintiff was no longer taking blood pressure medication.  AR

507.

Plaintiff thought that she could lift five pounds, using both hands.  She has no problem with sitting or standing.  Walking causes pressure on her right side and she estimated that she could try walking for an hour.  AR 508.

When questioned by her attorney, Plaintiff testified that she was right-handed.  She does not drive very much, maybe 30 minutes a week, and has trouble holding the steering wheel with her right arm.  She could hold the wheel for about 30 minutes.  Plaintiff has pain in her hands when she puts dishes into the dishwasher.  AR 509.  Plaintiff mostly uses her left hand to load the dishwasher.  She sometimes needs help getting dressed.  AR 510.

In addition to reaching back, Plaintiff also has trouble reaching up and forward.  Plaintiff does not cook because she's scared of burning herself.  She does not vacuum or do yard work, and uses her left hand to fold laundry.  AR 511.  Plaintiff explained that her left hand began hurting about a month ago.  She is also having trouble holding onto things.  AR 512.

Plaintiff went to Behavioral Health for depression about a month ago, after an eight to nine month wait because of insurance issues.  AR 512-513.  She is planning to go back for treatment.  Plaintiff takes medication for depression, which helped "kind of, not very much."  Plaintiff's medications make her weaker and she takes 15 minute naps everyday.  AR 513.

When questioned by the ALJ, Plaintiff explained that she was taking Motrin for her arm pain and that it helps a little bit.  AR 514.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person could lift and carry 20 pounds occasionally, 10 pounds frequently, and sit, stand and walk for 6 hours.  The VE testified that this person could perform Plaintiff's past work as a file clerk.  AR 516.

For the second hypothetical, the ALJ asked the VE to add a limitation to occasional overhead and backwards reaching and a prohibition against forceful gripping and grasping.  The VE testified that this person could perform unskilled, light work, with a thirty percent erosion.  Possible positions included grader, flat work tier and information clerk.  AR 516-517.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift 20 pounds occasionally, 10 pounds frequently, sit, stand and walk for 6 hours and occasionally reach

and handle. This person could occasionally perform forceful gripping and grasping and the right arm could be used as a "helper" only. The VE testified that this person could not work. AR 517.

Medical Record

After a diagnosis of stage III right breast carcinoma, Plaintiff underwent a right modified radical mastectomy and axillary node dissection on October 4, 2006. AR 216-217.   On October 30, 2006, Robert W. D'Acquisto, M.D., noted that an October 26, 2006, PET scan and CT scan were negative for metastatic disease. He diagnosed her with aggressive, large right breast cancer with two positive lymph nodes. He recommended that Plaintiff start chemotherapy on November 13, 2006. AR 332, 336-337.

Plaintiff returned for follow-up on February 26, 2007. She reported that she was extremely depressed, though she wouldn't explain why. Dr. D'Acquisto recommended that Plaintiff see the social worker to discuss the issue. AR 280.

On March 1, 2007, Dr. D'Acquisto noted that Plaintiff was feeling much better, both physically and psychologically. Plaintiff had completed her chemotherapy and was referred for radiation therapy. AR 275. Her chest port was removed on March 2, 2007, after an infection. AR 276.

Plaintiff saw Li Liu, M.D., for a radiation oncology follow-up on July 5, 2007. She had no specific complaints and denied upper extremity swelling or pain. There were no obvious signs of anxiety, agitation or depression and short and long term memory seemed to be intact. There was no evidence of disease. AR 360.

Plaintiff was seen in follow-up on August 1, 2007. She was doing extremely well and her only complaint was fatigue. AR 255.

On October 5, 2007, Plaintiff began complaining of right arm weakness. She was diagnosed with residual right shoulder/arm weakness. AR 209.

On October 24, 2007, Plaintiff returned to Dr. D'Acquisto, who noted that Plaintiff was doing very well and reported that her recent PET scan and mammogram were negative. Other than toenail fungus, her examination was normal. AR 249-251.

1    Plaintiff was seen at Alta Family Health Clinic on January 8, 2008.  She complained of

2    right arm pain for the prior three weeks and needed paperwork filled out.  Plaintiff reported

3    soreness in the right arm since her mastectomy and an inability to rotate her arm as much as she

4    used to.  Plaintiff also reported feeling depressed because of her cancer diagnosis and felt she

5    was mentally unable to work or go back to school.  Plaintiff was sad and tearful and had limited

6    range of motion in the right arm.  The right arm was also weaker than the left at 4/5.  She was

7    diagnosed with depression and right arm pain.  AR 409.

8    On January 16, 2008, Plaintiff was seen at Kings River Physical Therapy for an initial

9    evaluation.  Plaintiff reported that she began experiencing pain in her right shoulder two weeks

10   ago.  She was able to lay on the right side without discomfort and does not wake to pain.

11   Plaintiff had decreased range of motion in the right shoulder, decreased AC joint mobility, mild

12   postural deviations and subjective reports of recent onset of pain.  Timothy L. Altomare, P.T.,

13   recommended that Plaintiff undergo three therapy sessions per week for eight weeks.  AR 398-

14   399.

15   Plaintiff returned to Dr. Liu on January 17, 2008, for radiation oncology follow-up.  She

16   attended physical therapy for her right arm and reported significant improvement in range of

17   motion, though she continued to have numbness in the right arm.  On examination, there was no

18   evidence of disease.  AR 359.

19   Plaintiff was seen in follow-up on February 29, 2008.  Plaintiff complained of difficulty

20   with range of motion of the right arm, and slight swelling in the upper part of the arm.  There

21   were no complaints of pain and no signs of recurrent breast cancer.  Plaintiff was doing "very

22   well" and was given a prescription for physical therapy to try and improve range of motion in the

23   right arm.  AR 244.

24   Plaintiff was discharged from physical therapy on April 28, 2008.  She reported

25   improvement in her range of motion and stated that she is performing exercises at home as

26   instructed.  On examination, range of motion in the shoulder improved and strength was 5/5.

27   Joint mobility was unremarkable.  Plaintiff demonstrated excellent tolerance to the home

28   exercise program.  Range of motion had improved with decreased reports of pain.  AR 400.

1    Plaintiff returned for follow-up on May 23, 2008, and reported that she was felling well

2  and that physical therapy helped somewhat.  Plaintiff complained of some sadness and daytime

3  crying and stated that she and her husband were out of work.  Plaintiff was given samples of

4  Effexor.  AR 244.

5    Plaintiff was seen at Alta Family Health Clinic on June 27, 2008, for lab work and

6  completion of Social Security paperwork.  Plaintiff was wearing a compression tube/sock on her

7  right arm and was tearful at times.  She was instructed to increase her Effexor.  AR 201.

8    Also on June 27, 2008, Nurse Practitioner Melvin J. Duech opined that Plaintiff could not

9  work.  Her right arm was permanently weak and swollen due to prior cancer surgery and she had

10  temporary major depression.  Nurse Duech noted that Plaintiff is receiving medication and

11  counseling in hopes of allowing her to start a training educational program.  AR 198.

12    Plaintiff returned to Alta Family Health Clinic on July 8, 2008, and complained of right

13  arm pain since her mastectomy.  Plaintiff also complained of depression since her cancer

14  diagnosis and reported that she was mentally unable to work.  Plaintiff was sad and tearful.  She

15  had limited range of motion in her right arm and her right arm was weaker.  AR 204.

16    Plaintiff saw Debra C. Garley, M.D., on August 22, 2008.  She had a small amount of

17  lyphedema in the right upper arm and reported weakness in the right hand.  Plaintiff also

18  complained of some fatigue and reported that she was not sleeping well at night.  Dr. Garley

19  recommended a follow up PET scan given the weakness in her right hand  AR 372.

20    Plaintiff underwent a PET/CT scan on September 3, 2008.  There was no compelling

21  evidence of recurrent or metastatic breast carcinoma and no new abnormalities when compared

22  to the October 17, 2007, scan.  AR 371.

23    On October 27, 2008, Plaintiff saw Shireen R. Damania, M.D., for a psychiatric

24  consultation.  Plaintiff complained of depression and lymphedema in the right arm resulting from

25  radiation and chemotherapy.  Plaintiff has pain and numbness in the arm and has to wear an

26  elastic sleeve.  Plaintiff last worked in a doctor's office in 2002, but was laid off.  She lives with

27  her husband, a disabled construction worker, and her two sons.  Plaintiff reported becoming

28  increasingly tearful because of her situation and said she is embarrassed when she picks up her

1   food stamps.  Plaintiff was taking Effexor, prescribed by her primary care physician, for

2   depression.  Plaintiff stated that during the day, she tries to do a little, including cooking a little,

3   watching television and driving to see her family.  AR 351-353.

4        On mental status examination, Plaintiff's mood was mildly depressed.  She was teary-

5   eyed at times, but smiled appropriately other times.  Memory for recent and past recall was intact

6   and her attention span was within normal limits.  Plaintiff was of average intelligence and insight

7   and judgment were adequate.  AR 353.  Dr. Damania diagnosed adjustment disorder with

8   depressed mood and noted that Plaintiff had a moderate level of psychosocial stressors (health

9   concerns and unemployment).  Plaintiff had good interpersonal and social skills and there were

10   no difficulties with memory, concentration, persistence or pace.  Plaintiff could understand,

11   remember and carry out three and four step job instructions in a work like setting, respond

12   appropriately to coworkers, supervisors and the public, respond appropriately to usual work

13   situations and deal with changes in a routine work setting with normal supervision.  AR 354.

14        On October 30, 2008, Plaintiff was seen for a radiation oncology follow-up.  Plaintiff

15   complained of mild right chest wall tightness but denied shortness of breath.  Plaintiff was not in

16   acute distress and there was no edema in her extremities.  Dr. Lui concluded that there was no

17   evidence of disease and instructed Plaintiff to return in six months.  AR 357.

18        Also on October 30, 2008, Plaintiff saw Dr. Garley for a cancer follow-up.  Plaintiff was

19   doing well, though she had some lymphedema in her right arm.  Plaintiff had received physical

20   therapy to show her how to perform massages and was wearing a compression sleeve.  She was

21   still taking Effexor and reported good activity and normal appetite.  Dr. Garley noted that

22   Plaintiff was doing very well and had no evidence of cancer recurrence.  AR 369.

23        On November 10, 2008, Plaintiff saw Rustom F. Damania, M.D., for a physical

24   consultive examination.  Plaintiff complained of pain and swelling in her right arm and some

25   parathesias in the right upper portion of the arm.  Plaintiff reported that sunlight sometimes

26   aggravates the pain.  She also reported diabetes, hyperlipidemia and pain in her left arm based on

27   overuse.  Plaintiff stated that she does most household chores but has difficulty with lifting

28   anything heavy with the right arm.  AR 375.

1    On examination, Plaintiff was not in any acute distress or discomfort.  Coordination and

2  gait were normal.  Range of motion of the spine, hips, knees, ankles, elbows, wrist, fingers and

3  thumbs was normal.  Range of motion in the left shoulder was normal.  Range of motion in the

4  right shoulder was decreased and Plaintiff had difficulty due to pain.  The right arm was wrapped

5  from the wrist to the shoulder in a tight Ace bandage.  No tenderness or swelling was noted.

6  There was no sensory impairment in the hand.  AR 377.  Motor strength was 5/5 in both upper

7  and lower extremities and sensation and reflexes were normal.  AR 378.

8    Dr. Damania diagnosed status post stage III breast cancer, right arm wrapped due to

9  subjective history of lymphedema but no objective findings, diabetes and hyperlipidemia.  He

10  believed that Plaintiff should be able to lift and carry 20 pounds occasionally, 10 pounds

11  frequently, with the left side.  With the right side, Plaintiff would be restricted to 10 pounds

12  occasionally and frequently.  She would need a tight Ace wrap around the right arm.  Plaintiff

13  could stand, walk and sit without restriction.  She had no postural limitations or manipulative

14  limitations on the left side.  Plaintiff could perform occasional reaching, handling, feeling or

15  grasping with the right arm.  AR 378.

16    On April 22, 2009, State Agency physician P. Frye, M.D., completed a Physical Residual

17  Functional Capacity Assessment.  Dr. Frye opined that Plaintiff could occasionally lift and carry

18  20 pounds, 10 pounds frequently.  Plaintiff could stand and/or walk for 6 hours and could sit for

19  6 hours.  Plaintiff could not perform overhead reaching with the right upper extremity, but could

20  occasionally reach in other directions, handle, feel and grasp with the right arm.  She could

21  frequently climb ramps and stairs, but could never climb ladders, ropes or scaffolds.  Plaintiff

22  could frequently balance, stoop, kneel and crouch, but could never crawl.  AR 379-383.

23    On April 30, 2009, Plaintiff began seeing Robin Linscheid, M.D., at United Health

24  Centers.  Plaintiff complained of right arm pain and edema in her right arm and was wearing a

25  compression stocking.  Plaintiff also complained of mild symptoms of depression, though she

26  was no longer taking Effexor.  There was no edema or tenderness to palpation in Plaintiff's right

27  upper extremity, though she had slight limited range of motion with elevation of her right arm

28  and external rotation.  Plaintiff could only touch her ear and not the back of her head with the

1   right arm, and internal rotation was also somewhat limited.  Sensation was normal and grip

2   strength was 5/5 bilaterally.  Dr. Linscheid diagnosed right arm pain likely secondary to

3   mastectomy and chemoradiation.  Plaintiff was given amitriptyline to help with the pain and

4   depression.  AR 444-445.

5   In May 2009, a State Agency physician completed a Psychiatric Review Technique Form

6   and opined that Plaintiff's mental impairment was not severe.  AR 386.

7   Plaintiff returned to Dr. Linscheid on May 22, 2009.  She reported that amitriptyline

8   helped her right arm pain and depression, though she was having daytime sleepiness.  Her

9   symptoms of depression continued and her husband's health, as well as her financial situation,

10  were continued stressors.  Plaintiff was tearful in the room and crying, though she was

11  consolable.  Plaintiff wore the compression stocking and there was no edema in the extremities.

12  She had 2+/4 pulses bilaterally.  Dr. Linscheid diagnosed right arm pain secondary to

13  lymphedema and decreased Plaintiff's amitriptyline to help with daytime sleepiness.  Plaintiff

14  was also referred to Fresno Behavioral Health for further treatment.  Dr. Linscheid also noted

15  that Plaintiff had been denied disability, but that she has a number of medical problems that

16  contribute to her inability to work, including a mental disorder with depression.  AR 441.

17  On June 22, 2009, Plaintiff saw Dr. Linscheid in follow-up for depression.  Plaintiff

18  reported that she was sleeping better and that her mood was elevated.  Plaintiff was able to get

19  out and do things with friends and was not as fatigued and depressed.  She continues to be

20  stressed at home, however, because of her disabled husband.  Plaintiff's insomnia and pain were

21  improved with amitriptyline and her compression stocking helped her lymphedema.  Plaintiff

22  was in no acute distress.  Her right upper extremity had no edema, but it was in a compression

23  stocking.  Radial pulses were 2+/4 bilaterally.  Dr. Linscheid diagnosed depression, mild and

24  much improved.  Plaintiff was instructed to continue her amitriptyline and was given a referral to

25  behavioral health, though Dr. Linscheid believed that Plaintiff was improving and did not need

26  further treatment.  Plaintiff was instructed on diet and exercise to keep her blood pressure down.

27  AR 439.

28

Plaintiff saw Doan T. Truong, a social worker at UMHC, on November 21, 2009.  She complained of feeling depressed, worried, helpless and hopeless nearly every day for the past three years.  Plaintiff's mood was depressed and her affect was congruent.  Thoughts were focused, logical and coherent but she was preoccupied with health problems and financial hardship.  Memory was fair and judgment and insight were good.  Mr. Truong diagnosed major depressive disorder, recurrent, moderate and recommended medication support services.  AR 486, 489-491.

On February 3, 2010, Plaintiff saw Dr. Linscheid.  She has had no evidence of active cancer since her diagnosis and treatment.  Plaintiff continued to have some pain and occasional lymphedema in the right arm.  Plaintiff had a hole in her compression stocking and could not use it, though it was helpful for her pain.  Plaintiff was in no acute distress.  She was tender to palpation along the right upper arm, though there was no noticeable edema.  Dr. Linscheid assessed lyphedema and gave her a prescription for a new compression stocking and amitriptyline to help with pain and sleep.  AR 435.

Plaintiff began mental health treatment with Jorge Urbina, M.D., on March 19, 2010.  Plaintiff was being maintained on amitriptyline and reported depressed mood, crying spells, worthlessness, poor motivation and sleeping problems.  She also reported stressors from her medical and financial issues.  Plaintiff's mood was depressed and her affect was tearful.  Intelligence was average and insight and judgment were normal.  Dr. Urbina diagnosed major depressive disorder, recurrent, severe, and instructed Plaintiff to start Zoloft and gradually discontinue amitriptyline.  AR 483-484.

Also on March 19, 2010, Dr. Urbina completed a form for Fresno County General Relief.  Dr. Urbina opined that Plaintiff could not work due to "depressed mood, worthlessness, anhedonia, poor appetite and sleeping patterns and social isolation."  The onset date was March 19, 2010, and the disability was temporary.  Dr. Urbina expected to release Plaintiff for work on September 30, 2010.  AR 478-479.

On March 29, 2010, Dr. Linscheid completed a Questionnaire and opined that Plaintiff could perform no more than sedentary work.  Plaintiff's primary impairment was right arm pain

and lymphedema secondary to right breast cancer and treatment.  Plaintiff had "exquisite

tenderness to palpation" along the right arm and increasing edema with repetitive heavy lifting.

Plaintiff could sit for 8 hours and stand and/or walk for 2 hours.  She did not need to lie down or

elevate her legs, but needed to be able to wear a compression stocking on the right arm during

work.  Dr. Linscheid stated that she first saw Plaintiff on April 30, 2009, and that she was

disabled to this degree at that time.  AR 475.

Plaintiff returned to Dr. Urbina on April 20, 2010.  She reported feeling better with the

medication and rated her depression at an 8 out of 10.  Plaintiff's mood was depressed and her

affect was restricted.  Her intelligence was average and intelligence and insight were normal.  Dr.

Urbina instructed Plaintiff to increase her Zoloft.  AR 482.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of status post stage IV[2]

breast cancer, status post right modified radical mastectomy, and right upper extremity

lymphedema.  AR 24.  Despite these impairments, the ALJ determined that Plaintiff retained the

residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds

frequently, stand and/or walk for 6 hours, sit for 6 hours and occasionally reach overhead or

backwards with the right upper extremity.  Plaintiff could not perform any forceful gripping or

grasping.  AR 26.  With this RFC, Plaintiff could not perform her past relevant work but could

perform a significant number of positions in the national economy.  AR 28-29.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision

to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

the Court must determine whether the decision of the Commissioner is supported by substantial

evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

---

[2] The ALJ appears to have mistakenly characterized Plaintiff's cancer as stage IV.

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (status post stage IV breast cancer, status post right modified radical mastectomy, and right upper extremity lymphedema) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform her

past relevant work; but (5) could perform a significant number of jobs in the national economy. AR 24-29.

Here, Plaintiff argues that the ALJ (1) improperly analyzed the medical evidence; (2) incorrectly found that her mental impairment was non-severe; and (3) improperly analyzed her subjective testimony.

## DISCUSSION

A.      Analysis of the Medical Evidence

Plaintiff sets forth two arguments concerning the ALJ's treatment of the medical evidence.  First, she contends that the ALJ should have recontacted treating sources for medical source statements.  Second, she argues that the ALJ improperly rejected certain opinions.

The ALJ determined that Plaintiff retained the RFC to lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for 6 hours, sit for 6 hours and occasionally reach overhead or backwards with the right upper extremity, but with no forceful gripping or grasping.  AR 26.  In so finding, the ALJ gave little weight to Dr. Linscheid's opinion that Plaintiff could not perform more than sedentary work and could not stand or walk for more than 2 hours.  AR 28.  The ALJ game "some weight" to the opinions of consultive examiner Dr. Damania and the State Agency physician, but explained that he did not adopt the restrictions on lifting or overhead reaching with the right arm.  AR 28.  Ultimately, the ALJ's RFC most closely resembled the opinion of the State Agency physician, Dr. Frye.

1.      Recontacting Physicians

Plaintiff suggests that the ALJ erred by failing to recontact Nurse Practitioner Duech, who on June 27, 2008, opined that Plaintiff could not work because of weakness and swelling in her right arm and temporary major depression.  Plaintiff contends that Nurse Duech and Dr. Linscheid should have been recontacted "to obtain clarification."  Opening Brief, at 6.

Plaintiff does not explain, however, what aspects of their opinions needed clarification.  Plaintiff also references the ALJ's "confusion," though she does not further elaborate.  Opening Brief, at 6.

1    It is Plaintiff's burden to produce full and complete medical records, not the

2    Commissioner's.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  However, when the

3    evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the

4    evidence, the ALJ has a duty to develop the record.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150

5    (9th Cir.2001).  The ALJ may discharge this duty in one of several ways, including subpoenaing

6    claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or

7    keeping the record open after the hearing to allow supplementation of the record.  *Id.*

8    Here, rather than finding that Dr. Linscheid's report was inadequate to make a

9    determination regarding Plaintiff's disability, the ALJ simply disagreed with the report.

10   Similarly, Nurse Duech's report is very straightforward- Plaintiff could not work because of

11   problems with her right arm and depression.  Accordingly, there was no ambiguity or inadequacy

12   to trigger the ALJ's duty to develop the record.

13   Insofar as Plaintiff argues that the ALJ had a duty to ask Plaintiff's treating sources to

14   submit a medical source statement form pursuant to 20 C.F.R. § 416.913(b)(6), her argument is

15   without merit.  Again, the duty is triggered only where the evidence does not clearly establish the

16   effects of the claimant's impairments on her ability to work.  There was no such insufficiency

17   here.

18       2.       Analysis of Opinions

19       *Dr. Linscheid, Dr. Damania, Dr. Frye and Nurse Duech*[3]

20   Plaintiff contends that the ALJ rejected Nurse Duech's opinion without discussing it and

21   improperly rejected the opinions of Dr. Linscheid, Dr. Damania and Dr. Frye.  Specifically, she

22   challenges the ALJ's rejection of the right arm limitations.

23   Plaintiff correctly argues that the ALJ did not discuss Nurse Duech's opinion that

24   Plaintiff could not work because of weakness and swelling in her right arm and depression.

25   Defendant suggests that this was not error because a nurse practitioner is an "other source" under

26   the regulations and the ALJ "*may*" use such evidence.  20 C.F.R. § 404.1513(d)(1).  Yet whether

27

28       [3] Plaintiff also contends that the ALJ improperly rejected the opinion of Dr. Urbina.  The Court will address
this issue in discussing the severity of Plaintiff's mental impairment.

the ALJ needed to discuss the evidence turns not on the classification of the source, but rather on whether the evidence was significant and probative.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003) (noting an ALJ need not discuss "evidence that is neither significant nor probative").  Certainly, an opinion from a treating source that Plaintiff cannot work based on a chronic right arm impairment is significant and probative in light of Plaintiff's claims.

In assessing the remaining opinions, the ALJ adopted the lifting limitations of the State Agency physician, Dr. Frye, over those of both the consultive examiner and the treating source. While Dr. Frye opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, with both arms, Dr. Damania imposed a 10 pound limit with the right arm and Dr. Linscheid imposed a 10 pound limit on both arms.

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

Here, the ALJ explained that he rejected Dr. Linscheid's opinion because it was inconsistent with the overall record and because there was no justification for the limitation on Plaintiff's ability to stand and walk.  In support of the sedentary lifting limit of 10 pounds, Dr. Linscheid listed Plaintiff's primary impairments as right arm pain and lymphedema secondary to right breast cancer and treatment.  Objective findings included "exquisite tenderness to palpation along right arm and increasing edema with repetitive heavy lifting."  AR 475.

1    In rejecting the severity of Plaintiff's lymphedema generally, the ALJ conceded that there

2    were "some complaints of right arm pain and numbness, likely caused by lymphedema." AR 27-

3    28. However, the ALJ stated that the treating doctors generally "don't make examination

4    findings of the right arm, but only report was the claimant says." She continues, "There was no

5    edema noted in any of the medical records and tenderness was only noted one time." AR 28.

6    The ALJ's characterization of the record, however, does not support a rejection of right

7    arm lifting limitations imposed by both the treating physician and consultive examiner. While

8    there was only one notation of swelling, Plaintiff was wearing the compression stocking at

9    almost all of her appointments. Moreover, the ALJ doesn't acknowledge the repeated findings of

10   weakness and decreased range of motion. The record demonstrates an impairment with the right

11   arm and the ALJ's downplay of her symptoms does not constitute substantial evidence to reject

12   the right arm lifting limitations of both the treating and consulting source.

13   The ALJ also relied on this mischaracterization of the medical record in rejecting the

14   broader reaching, handling and feeling limitations imposed by both Dr. Frye and Dr. Damania.

15   The ALJ found these limitations to be "slightly overly restrictive." AR 28. Also, in discussing

16   Dr. Damania's examination, she noted that the examination was "generally normal except some

17   limitation in the claimant's range of motion of the right arm due to pain, but no swelling or

18   tenderness was noted." AR 28. Again, however, Plaintiff was wearing a tightly-wrapped Ace

19   bandage during the examination.

20   Accordingly, given the deference that should be afforded to treating and consultive

21   sources, the ALJ's analysis of the medical record does not constitute substantial evidence to

22   support the rejection of portions of their opinions. Combined with the ALJ's failure to discuss

23   Nurse Practitioner Duech's opinion, the ALJ's analysis of Plaintiff's right arm limitations was

24   not supported by substantial evidence and was not free of legal error.

25   B.    Analysis of Plaintiff's Mental Impairment

26   Plaintiff next argues that the ALJ erred in finding that her depression was not a severe

27   mental impairment.

28

Plaintiff bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if his impairments are severe and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505, 404,1520(a).  A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting.  20 C.F.R. § 404.1521(b).

"An impairment ... may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.2005) (internal quotation omitted).  The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  *Id.*; SSR 85-28.  Step two, then, is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence."  SSR 85-28.

Here, the ALJ found that Plaintiff's depression was not a severe impairment at step two.  In making this finding, she found that Plaintiff's depression "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  AR 24.  For the reasons that follow, substantial evidence does not support this finding.

The ALJ states that there are "some references" to Plaintiff's depression in the record, yet this is also a mischaracterization of the record.  Plaintiff began complaining of depression in February 2007, a few months after her mastectomy.  AR 280.  She improved for a while, but by January 2008, the complaints became consistent and continued through the remainder of the medical record.  AR 198, 201, 204, 244, 275, 351-354, 409, 439, 441, 444-445, 475, 482, 486, 489-491.

The ALJ next describes Plaintiff's mental health treatment as "minimal" and states that she was prescribed Effexor for a time but by April 2009, had been off it for "many months."  AR 352.  Plaintiff's consistent complaints of depression, and her use of at least three medications in attempts to alleviate her symptoms, cannot be said to be "minimal."  Although Plaintiff had stopped taking Effexor when she saw Dr. Linscheid in April 2009, she continued having symptoms and was prescribed amitriptyline.  AR 445.

The ALJ next cites Dr. Linscheid's June 2009 notation that Plaintiff's depression was "much improved."  However, although her depression improved in June 2009, by November 2009, she began reporting significant symptoms again.  AR 486, 489-491.  In March 2010, Plaintiff was depressed, tearful and prescribed Zoloft.  AR 483-484.  By April 2010, she was feeling better on her medications, though her mood remained depressed and her affect restricted.  Dr. Urbina increased her Zoloft.  AR 481.  *See eg., Morgan v. Comm'r, 169 F.3d 595, 605 (9th Cir. 1999)* ("[D]epression is a complex and highly idiosyncratic phenomenon that often waxes and wanes, eluding neat description; it would be naive to expect someone suffering from depression and suicidal ideation to remain consistent in the way in which the ALJ demands.")

Next, the ALJ faults Plaintiff for failing to follow up with Dr. Linscheid's June 2009 referral to behavior health.  AR 25, 439.  The ALJ's statement is not supported by substantial evidence for at least three reasons.  First, Dr. Linscheid noted that although she gave Plaintiff the referral, she believed that Plaintiff was improving and did not need further treatment.  It is unclear if this was communicated to Plaintiff.  Second, the ALJ acknowledges that Plaintiff did indeed report to behavioral health in November 2009.  AR 25, 486-491.  Third, during the hearing, Plaintiff explained that there was a significant delay in receiving mental health treatment because of insurance issues.  AR 512-513.  Therefore, no only are the ALJ's statements incorrect, they are belied by Plaintiff's explanations.

In analyzing the medical opinions related to Plaintiff's mental health, the ALJ rejects Dr. Urbina's opinion that Plaintiff was temporarily disabled for six months as "inconsistent with the medical record and generally vague."  AR 25.  Contrary to her characterization, Dr. Urbina's report is straightforward- from March to September 2010, he expected Plaintiff to be temporarily

disabled due to depressed mood, worthlessness, anhedonia, poor appetite and sleeping patterns and social isolation.  AR 478-479.  Similarly, the ALJ's description of the opinion as inconsistent is misplaced given her persistent complaints and symptoms, especially where the ALJ erred by failing to address the supporting opinion of Nurse Practitioner Duech.

As her reasons were not supported by substantial evidence, the ALJ erred at step two in finding Plaintiff's depression to be a non-severe impairment.  Such an error is harmless if the ALJ continued to consider limitations arising from the non-severe impairment throughout the sequential evaluation process.  *Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir.2007).  Here, however, the ALJ did not discuss Plaintiff's depression in the remainder of the decision and the Court cannot conclude that the error was harmless.

C.     Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ misstated and/or ignored her subjective testimony.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan, 169 F.3d at 599* (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.*  Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair, 885 F.2d at 603*; *see also Thomas, 278 F.3d at 958-59.*

Here, the ALJ rejected Plaintiff's testimony based first on inconsistencies between her testimony and the report of her son. AR 27. The ALJ summarized Plaintiff's testimony regarding her daily activities as follows:

> She said she has a driver's license and drives and can care for herself mostly, but needs help in the bath. The claimant does dishes, prepares simple meals, shops, and attends church, and visits friends and family. She does not watch television, listen to music, or read, but she does take naps regularly. She said she cannot cook, vacuum, or do yard work, but she does do a little laundry. The claimant said that she uses her left hand to do most things and in the last months she started having pain in her left hand. AR 26.

She then set forth "inconsistencies" in Plaintiff's son's September 2008 Function Report. For example, Plaintiff's son, Alex, stated that he and his mother clean the house and feed the animals together. On a daily basis, he stated that Plaintiff prepares food, cleans the house and feeds the animals. AR 27, 161. He reported that Plaintiff spends 5 to 6 hours per day cleaning, sweeping and doing laundry. AR 27, 163. Alex also reported that Plaintiff cares for her husband. AR 27, 162. Alex explained that Plaintiff cooks complete meals daily, for 2 to 3 hours, though she is careful not to hurt her arm. AR 27, 163. Plaintiff drives, shops, handles money, reads and watches television daily, and visits or talks on the phone two to three times per week. AR 27, 164-165. The ALJ also recognized Alex's report that he helps Plaintiff move things and that her conditions affect her ability to bend, reach, climb stairs, see, remember, concentrate, understand and use her hands. AR 27, 162, 166.

The ALJ gave "significant weight" to Alex's report of Plaintiff's activities of daily living, but did not accept his testimony regarding the "affected" areas because it was not consistent with the record as a whole. AR 27. Plaintiff contends that the ALJ misunderstood Alex's report because it was not necessarily inconsistent with her claims that her condition has worsened and further impacted her activities of daily living. Plaintiff characterizes Alex's report as stating that it took her up to 6 hours to complete housework and that she was not actually working the entire time.

The Court agrees that Alex's report does not necessarily undermine Plaintiff's testimony. For example, when asked "how much time do chores take and how often does he/she do each of these things," Alex responded, "everyday about 5 to 6 hours." AR 163. As Plaintiff suggests,

this implies that it *takes* Plaintiff 5 to 6 hours to complete chores and it is unclear how much Plaintiff attempts to do in this time frame.  It is also relevant that Alex's report was completed in September 2008, yet Plaintiff's complaints of pain and findings of decreased range of motion continued into 2010.

Alex's report is simply not as inconsistent as the ALJ suggests and is, to some extent, vague.  It does not serve as substantial evidence to reject Plaintiff's testimony.

The only other reason cited by the ALJ is the alleged inconsistency between Plaintiff's testimony and the medical record.  The Court need not examine the analysis further because objective evidence cannot be the sole reason for rejecting a claimant's credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

For these reasons, the ALJ's credibility analysis was not supported by substantial evidence and was not free of legal error.

D.    Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the ALJ erred in her analysis of the medical record, at step two of the sequential evaluation process and in determining Plaintiff's credibility.  Further proceedings can remedy these defects.  The Court emphasizes that its findings are not a suggestion of disability.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is not based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED and the case REMANDED for further proceedings.  The Court FURTHER RECOMMENDS that JUDGMENT be entered for Plaintiff Graciela Salinas and against Defendant Michael J. Astrue.

These Findings and Recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

  IT IS SO ORDERED.

**Dated:   December 6, 2011**          _____ **/s/ Dennis L. Beck** _____
                               UNITED STATES MAGISTRATE JUDGE